IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:06-CV-144-BO

AMERICAN SOUTHERN INSURANCE COMPANY,

Plaintiff,

v.

JASON EHMER, J.E. CONSTRUCTION, PRO CONSTRUCTION, INC., ANTONIO L. BAEZ, CHRISTOF W. WALTI, CHRISTOPHER W. CHILCUTT, TARIQ Z. DAHDAL,

Defendants.

ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Plaintiff argues that it is entitled to void J.E. Construction's insurance policy due to material misrepresentations or, alternatively, that the Court should declare that the injuries sustained from J.E. Construction's allegedly faulty construction of roof trusses are not covered because J.E. Construction was performing uninsured operations. For the reasons stated below, Plaintiff's motion is DENIED.

## I. SUMMARY OF THE INSTANT DISPUTE

On August 15, 2005, Jason Ehmer ("Ehmer"), owner of J.E. Construction, completed an Artisan Contractor General Liability Application ("Application") in which he described J.E. Construction's business operations as "Carpentry." On August 19, 2005, Plaintiff issued a

commercial general liability policy ("the Policy") to Ehmer. The Policy contains an exclusionary clause which limits the insurance coverage to "locations and operations that are described under the "Description of Hazards" ("Business Description") section of a coverage part of this policy." The Policy provides that any terms expressed in quotes will be defined in Section V of the Policy. However, neither "Description of Hazards" nor "Business Description" are defined. There is no "Description of Hazards" section of the Policy. The "Business Description" section of the Policy describes the business singly as "Carpentry."[1]

On September 27, 2005, Pro Construction, Inc. ("Pro Construction") was contracted to construct a canopy at the main gate entrance to Camp Lejeune. On November 17, 2005, Ehmer, on behalf of J.E. Construction, submitted a proposal to Pro Construction to provide and install wooden roof trusses and to provide, install, and sheet with plywood sheathing a steel frame. On December 13, 2005, Pro Construction entered into a Subcontract Agreement with J.E. Construction to "provide and install rough carpentry and wood trusses."

On December 15, 2005, a portion of the trusses had been erected when a storm hit, collapsing the trusses and injuring Defendants Antonio L. Baez, Christof W. Walti, Christopher W. Chilcutt, and Tariq Z. Dahdal ("the Marines personnel"). The Marines personnel submitted letters of representation to Plaintiff on January 18, 2006.

Plaintiff filed a Complaint for Declaratory Judgment on September 29, 2006, seeking a declaration that the Policy did not cover the injuries sustained by the Marines personnel. The

---

[1]Note that the Application contained a similar clause restricting coverage of the policy to only those "locations and operations that are described under the "Description of Hazards" section" of the Policy. As noted above, there is no Description of Hazards section in the Policy, so this clause is meaningless.

Marines personnel filed an Answer on October 12, 2006. Default was entered by the Clerk of Court as to J.E. Construction and Pro Construction on June 14, 2007. On June 28, 2007, Pro Construction filed an Answer. Plaintiff filed a Motion for Summary Judgment on November 17, 2008. Pro Construction filed a memorandum in opposition on December 8, 2008. Plaintiff's motion is now ripe for ruling.

## II. DISCUSSION

Plaintiff's Motion for Summary Judgment is DENIED because the Policy may not be voided and the work that caused the injuries was insured under the Policy. A district court should grant summary judgment where there are no genuine issues of material fact for trial. FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the initial burden of establishing the lack of a genuine issue as to any material fact, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex,* 477 U.S. at 324. The court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), however, conclusory allegations and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

There are two issues before this Court: (1) whether Plaintiff is entitled to void the Policy due to material misrepresentations; and (2) whether the Policy covered all carpentry activities or

only residential carpentry.[2]

**A. Policy Not Void**

Plaintiff is not entitled to void the policy because genuine issues remain as to whether Ehmer's representation that his business operations exclusively centered around carpentry was false or material. "Under N.C.G.S. § 58-3-10, an insurance policy may be avoided if the insured makes a representation which is both (1) *false* and (2) *material*." *Matter of McCrary*, 112 N.C.App. 161, 168-69, 435 S.E.2d 359, 365 (1993) (emphasis in original). "[A] representation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the rate of the premium." *Goodwin v. Investors Life Ins. Co. Of N. Am.*, 332 N.C. 326, 331, 419 S.E.2d 766, 769 (1992) (internal citations and quotations omitted). Whether a misrepresentation is material "depends upon the circumstances in each case and is usually, though not always, a question of fact for the jury." *Michael v. St. Paul Fire and Marine Ins. Co.*, 65 N.C.App. 50, 308 S.E.2d 727, 730 (1983).

*I. False*

---

[2]Note that this Court will apply North Carolina law because "the law of the forum state controls in a declaratory judgment action based on diversity of citizenship." *Whiteville Oil Co, Inc. v. Federated Mut. Ins. Co.*, 889 F.Supp. 241, 246 (E.D.N.C. 1995), *aff'd*, 87 F.3d 1310 (4th Cir. 1996) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). "With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Ehmer completed the application with a North Carolina agent and the policy was delivered to his North Carolina address. Accordingly, North Carolina law applies.

Genuine issues remain as to whether Ehmer's representation that his company performed solely carpentry work was false. Plaintiff argues that Ehmer's representation was false because Ehmer, through J.E. Construction, entered into a contract to perform the non-carpentry work of installing wooden trusses and framing. However, Plaintiff fails to suggest a definition for carpentry in its brief. In fact, "Carpentry," the meaning of which is central to this suit, is not defined in the Policy.

If a policy fails to define a term that term is to "be given [its] meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Gaston County Dyeing Mach. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)). "In determining the ordinary meaning of a word, it is appropriate to look to dictionary definitions." *Herring v. Liner*, 163 N.C.App. 534, 538, 594 S.E.2d 117, 120 (2004) (citing *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C.App. 506, 512, 428 S.E.2d 238, 241 (1993)).

"Carpentry" is defined as "the art of shaping and assembling structural woodwork." Webster's Ninth New Collegiate Dictionary 209 (9th ed. 1990). By Plaintiff's own admission, the work J.E. Construction contracted to perform was the installment of "roof trusses and framing at the Main Gate at Camp LaJeune [sic]." Roof trusses are frames made of wood and held together with metal connector plates that add support and shape to a roof. The construction and installation of such frames clearly constitutes the art of shaping and assembling structural woodwork and is thus carpentry.

The question then becomes whether the installation and subsequent sheathing of the steel

frames constitutes carpentry. Such operations, at first glance, appear to fall on the outer edges of the definition of carpentry listed above, if they are enclosed by the definition at all. However, the Policy was a general liability coverage for commercial operations. In addition, Ehmer sought an insurance policy for the carpentry work of his company, J.E. Construction. Thus, the context indicates that the term should be given its meaning within the field of commercial carpentry. The only evidence presented regarding the meaning of this term in a commercial context is the Subcontract Agreement between Pro Construction and J.E. Construction, which identifies the framing operations as "rough carpentry." Thus, a genuine issue remains as to whether the framing falls within the meaning of carpentry.

*II. Material*

Even if Ehmer's representation was false, it was not material because the injuries resulted from J.E. Construction's clearly covered activities. Whether "representations are material depends upon the circumstances of each case and is usually, though not always, a question of fact for the jury." *Michael v. St. Paul Fire and Marine Ins. Co.*, 65 N.C.App. 50, 308 S.E.2d 727 (1983) (no negative history). In *Michael*, the Court held that the insured's representation that he would lock 98% of his store's jewelry in a safe at night did not bar his recovery when he failed to secure the jewelry in a safe the night he was robbed. *Id* at 53-54, 308 S.E.2d at 730-31. Instead, the Court held that his failure to abide by this representation limited his recovery to the property damage suffered and the cost of 2% of the jewelry, the amount which the insurance company would have had to cover had the insured properly performed his duties under the policy.

The Court reasoned that the insured's "promise to lock 98% of the jewelry in the safe was

not material to the policy coverages for property damage [suffered from the break in] and the other 2% of the jewelry." *Id* at 55, 308 S.E.2d at 731. This decision was reached even though the Court accepted that leaving more jewelry outside of the safe made the store more appealing to a potential robber, a fact which certainly would have naturally affected the insurance company's estimation of the degree and character of the risk and the rate of the premium.

Similarly here, J.E. Construction represented that "carpentry" was an accurate description of all of its business operations and subsequently entered into a contract to perform a combination of carpentry and arguably non-carpentry work. Both parties agree that it was J.E. Construction's installation of the wood trusses, which is carpentry work for the reasons discussed above, that caused the injuries to the Marines personnel. Thus, the insurance company would undoubtedly have had to cover the injuries under the Policy. The mere fact that J.E. Construction may have contracted to perform uninsured operations is irrelevant and does not affect its claim.

Therefore, because genuine issues remain as to the truth of Ehmer's statement that the only work J.E. Construction performed was carpentry and because this representation was not material, Plaintiff's Motion for Summary Judgment is DENIED.

**B. Carpentry or Residential Carpentry**

The Policy covers all carpentry operations because the exclusionary clause must be narrowly construed. "The fundamental rule in interpreting insurance policies is that the language of the policy controls." *North Carolina Farm Bureau Mut. Ins. Co. v. Fowler*, 162 N.C.App. 100, 103, 589 S.E.2d 911, 913 (2004) (internal citations omitted). However, "exclusionary clauses are not favored and must be narrowly construed." *Western World Ins. Co. v. Carrington*,

90 N.C.App. 520, 523, 369 S.E.2D 128, 130 (1988) (citations omitted).

Plaintiff argues that the Policy's exclusionary clause limits coverage to residential carpentry, which is the description located in the "Classification" section of the Policy, and that construction of a canopy in a Marine Corps base is not residential carpentry. In support of this argument, Plaintiff relies on an exclusionary clause in the Policy that limits coverage to the "operations described under the "Description of Hazards" ("Business Description") section" of the Policy. Though the Policy indicates that "words and phrases that appear in quotation marks have special meaning" and will be defined in "Section V - Definitions," neither phrase is defined. No "Description of Hazards" section exists in the Policy and the "Business Description" section plainly states that the Policy covers "Carpentry." Thus, if the exclusionary clause is narrowly construed, as it must be, then the Policy must be interpreted to cover all operations which fall into the category of carpentry.

While the title of the exclusionary clause, "Classification Limitation," might cause one to conclude that the Policy's coverage is limited to operations described under "Classification," namely residential carpentry, the plain language of the exclusionary clause limits coverage to operations described in the Business Description section, not the Classification section. At best, the conflicting title and description serve to show that the clause is ambiguous, and "ambiguity is resolved in favor of coverage." *Fowler*, 162 N.C.App. at 103, 589 S.E.2d at 913. Thus, the Policy insures all carpentry operations. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED.

III. <u>CONCLUSION</u>

Plaintiff's Motion for Summary Judgment is DENIED because genuine issues remain as to whether J.E. Construction's contract to provide and install wooden trusses and framing violated the Policy such that injuries resulting from the trusses are excluded from coverage.

SO ORDERED, this 2 day of ~~January~~ February 2009.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE